UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JON GARFIELD, | ) | CASE NUMBER: |
| c/o Friedman Nemecek & Long, L.L.C | ) | |
| 1360 E. 9th Street | ) | |
| Suite 650 | ) | |
| Cleveland, Ohio 44114 | ) | |
| | ) | JUDGE: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RAYMOND SCOTT REPINSKI, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Jon Garfield, by and through undersigned counsel, Eric F. Long and Tyler J. Walchanowicz of Friedman Nemecek & Long, L.L.C., files this Complaint against Raymond Scott Repinski. In support of this Complaint, Plaintiffs state as follows:

## PARTIES.

1. Plaintiff is an individual who resides in Los Angeles County, California.

2. Upon information and belief, Defendant is a current resident of Cuyahoga County, Ohio. While his exact address is unknown at this time, Defendant has recently made statements to Plaintiff that he is currently residing in Cleveland Heights, Ohio. While Plaintiff is attempting to locate Defendant's address for purposes of service, the severity and continuing nature of the harm being incurred by Plaintiff as a result of Defendant's conduct warrants the immediate filing of this suit.

## JURISDICTION AND VENUE

3. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Plaintiff is a resident of California. Defendant is a resident of Ohio. Therefore, complete diversity of citizenship exists. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

4. Venue is proper in the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions on which the claims asserted herein are based occurred in this District.

## STATEMENT OF FACTS

5. Plaintiff was introduced to Mr. Repinski in November, 2017, by a mutual friend.

6. Plaintiff was told by the mutual friend that Mr. Repinski is a CPA and could successfully create tax plans and/or strategies that helped individuals and businesses reduce their tax burdens.

7. In November, 2017, Plaintiff and Defendant had an initial conversation wherein Defendant outlined his tax strategy and urged Plaintiff to use Defendant's services. This strategy involved setting up various Limited Liability Companies for tax purposes. After the conversation concluded, Plaintiff declined Defendant's offer for services.

8. In August 2021, Plaintiff and Defendant had another conversation regarding Defendant's tax strategy. During the conversation, Defendant again outlined his tax strategy, which was designed to help individuals reduce their tax burdens through the use of Limited Liability Companies. Defendant told Plaintiff that he has successfully implemented the tax strategy several times and informed Plaintiff that Defendant was teaching CPE courses on his tax strategy.

9. Plaintiff and Defendant did not speak again until late 2022.

10. In late 2022, Plaintiff agreed to engage the services of Defendant, which were aimed at implementing Defendant's tax strategy to reduce his tax obligations.

11.     On December 22, 2022, Defendant emailed Plaintiff to tell him that Defendant had a tax plan for Plaintiff. This plan included opening the limited liability companies. *See* Email attached as *Exhibit A*.

12.     On December 26, 2022, Plaintiff received an email from Jacob Edelman, who, upon information and belief, is an attorney located in Boca Raton, Florida and was working directly with Defendant. Attached to the email was an outline of the services that would be provided in opening two limited liability companies. Upon information and belief, the entity that would be providing these services, in connection with Attorney Edelman and Defendant was Accounttemps, a Robert Half company, which is a $1.5 Billion S&P 500 company. *See* Email attached as *Exhibit B*.

13.     On December 27, 2022, Plaintiff received another email from Attorney Edelman, stating that the cost of services for the limited liability companies would be $8,970.00, including expenses. *See* Email attached as *Exhibit C*.

14.     On December 28, 2022, Plaintiff received a third email from Attorney Edelman. Attached to this email was a letter stating that Attorney Edelman could save Plaintiff over $350,000.00 and opining that his tax plan/strategy was fully legal. *See* Email attached as *Exhibit D*.

15.     On January 3, 2023, Plaintiff received a fourth email from Attorney Edelman. This email contained a "to-do" list, which showed that everything was to be completed by Accounttemps. *See* Email attached as *Exhibit E*.

16.     On January 4, 2023, Attorney Edelman sent Plaintiff an email with a letter attached thereto. This letter indicated that Defendant would perform normal and customary CPA services, including being the initial signor on the bank accounts, with Plaintiff serving as back up, and Defendant

3

would work with Plaintiff throughout the year on how to manage the accounts. *See* Email attached hereto as *Exhibit F*.

17. In this letter, Defendant also requested that Plaintiff provide him with $2,500.00 to help pay Defendant's rent and $4,100.00 to cover Defendant's untimely child support payments. *Id*

18. Defendant told Plaintiff that in order to implement the tax strategy, Plaintiff and Defendant needed to set up two limited liability companies. Listening to the advice of Defendant, Plaintiff allowed Defendant to set up two limited liability companies.

19. On January 13, 2023, Plaintiff received an email from Attorney Edelman, which contained proof of the limited liability company registration and the opening of the Bank of America bank accounts. The passwords for the bank accounts were also included in the January 13, 2023 email. *See* Email attached as *Exhibit G*.

20. The first limited liability company was named Osseo, L.L.C., and was registered as a limited liability company by Defendant.

21. Defendant told Plaintiff that the tax strategy involved Osseo, L.L.C. receiving direct deposits from Bay State Physical Therapy, where Plaintiff served as Board of Director.

22. Plaintiff authorized his direct deposits from Bay State Physical Therapy to be deposited in the Osseo L.L.C. Bank of America Account. *See* Payment Report attached as *Exhibit H*.

23. The second limited liability company was named Artas, L.L.C., and was registered as a limited liability company by Defendant.

24. Defendant told Plaintiff that the tax strategy involved Artas, L.L.C. receiving direct deposits from Blue Water Vaccines, where Plaintiff served as Chief Financial Officer.

25. Plaintiff authorized his direct deposits from Blue Water Vaccines to be deposited into the Artas, L.L.C. Bank of America Account. *See* Payment Report attached as *Exhibit I*.

26. During discussions of the tax plan/strategy, Defendant told Plaintiff that while Defendant would set up the limited liability companies, Plaintiff would be the sole officer of the companies. Defendant also promised Plaintiff that Plaintiff would have complete control of the bank accounts set up in the names of Osseo L.L.C., and Artas, L.L.C.

27. Defendant had promised Plaintiff that once the bank accounts were opened and running, Defendant would remove himself from the bank account and relinquish all control to Plaintiff. Defendant never did this.

28. On April 1, 2023, Plaintiff received an email from Attorney Edelman with a final invoice. In total, Plaintiff paid Attorney Edelman a fee of $8,970.00 to open the limited liability companies. *See* Email attached as *Exhibit J*.

29. In April, 2023, Defendant unilaterally, and without permission from Plaintiff, revoked Plaintiff's access to the bank accounts' online portal and changed the bank account passwords.

30. During this time, Defendant refused to allow Plaintiff to withdraw funds from the account, despite the fact that Plaintiff was the legal and rightful owner to all funds in the accounts.

31. Defendant knew, at the time, that he did not own or have any legal right to the funds in the accounts.

32. In September, 2023, Plaintiff requested that the relationship between Plaintiff and Defendant be terminated, and requested that Defendant close the bank accounts, withdraw the funds, and refund Plaintiff the money in the accounts.

33. During their first conversation regarding closing the accounts, Defendant agreed to close the Osseo, L.L.C., bank account, withdraw the funds, and return the funds to Plaintiff.

34. That following Monday, Plaintiff called Defendant to provide documents to Defendant and to obtain his money. On this phone call, Defendant reneged on the agreement and told Plaintiff

that he was not going to close the accounts and no money would be returned to Plaintiff. The phone call ended with Defendant yelling at Plaintiff and hanging up.

35. Over the course of the next several weeks, Defendant sporadically spoke with Plaintiff and continued to refuse to withdraw the funds from the accounts/return the funds to Plaintiff.

36. On October 24, 2023, the same mutual friend of Plaintiff and Defendant that introduced them to each other attempted to contact Defendant in hopes of convincing Defendant to close the bank accounts and release the funds back to Plaintiff. Defendant has refused to speak to the mutual friend.

37. On December 2, 2023, Defendant called Plaintiff and began yelling at Plaintiff. Defendant called Plaintiff a liar. Plaintiff again asked Defendant to withdraw the funds in the bank accounts and return them to Plaintiff. Defendant ignored this request.

38. On December 2, 2023, Defendant sent an email to several individuals, including Plaintiff. Attached to this email was a poster made by Defendant depicting Plaintiff's face and calling him a criminal. Also included in this email was a statement wherein Defendant accused Plaintiff of "falsely claiming" that he has earned money and/or was on the payroll of Bay State Physical Therapy. *See* Email attached as *Exhibit K*.

39. At the time Defendant made these statements and accusations, he knew them to be false. Defendant has communicated these false statements to numerous people, both verbally and in writing.

40. Based upon a December 2, 2023 Bank of America account statements sent by Defendant to Plaintiff, the Osseo L.L.C. account held a balance of $120,234.00. The Osseo L.L.C. bank account also contains two CD's, one valued at $50,328.94 and the other valued at $30,100.13. *See* Bank Statement attached as *Exhibit L*.

41. Both the available funds and the CDs are the property of Plaintiff and Plaintiff only. Defendant has no legal right to the contents of the bank account. Plaintiff has repeatedly requested that Defendant close the account and return the funds and CDs to Plaintiff. To date, Defendant has refused to do so.

42. Based upon a December 2, 2023, Bank of America account statements sent to Plaintiff, the Artas, L.L.C. account held a balance of $900,643.65. The Artas, L.L.C. account also contains two CDs, one valued at $50,328.94 and the other valued at $25,083.45. *See* Bank Statement attached as *Exhibit M*.

43. Both the available funds and the CDs are the property of Plaintiff and Plaintiff only. Defendant has no legal right to the contents of the bank account. Plaintiff has repeatedly requested that Defendant close the account and return the funds and CDs to Plaintiff. To date, Defendant has refused to do so.

44. On December 14, 2023, Defendant told Plaintiff that he intended to withdraw $400,000.00, combined, from the accounts to use for "other purposes." During the phone conversation, Plaintiff objected to Defendant's "plan," and told him not to do anything with the money in the accounts.

45. On December 15, 2023, Defendant told Plaintiff that, despite Plaintiff's objections, Defendant did, in fact, withdraw $400,000.00 from the accounts to use for other purposes.

46. On December 23, 2023, Plaintiff received updated statements from the bank accounts. These statements indicate that Defendant did withdraw a total of $536,000.00 from the accounts. *See* Bank Statements attached hereto as *Exhibit N*.

## COUNT I

### (Conversion)

47. Plaintiff adopts and incorporates each of the above paragraphs as if fully written herein.

48. Plaintiff is the rightful and sole owner of the contents of the Osseo Bank of America account and the Artas Bank of America account.

49. Despite multiple requests to do so from Plaintiff, Defendant refuses to allow Plaintiff to access the contents of the bank accounts. Defendant also refuses to withdraw the contents of the bank accounts and return the contents of the bank accounts to Plaintiff.

50. Defendant has also withdrawn money from the account, without Plaintiff's consent and without legitimate or legal reason to do so. Defendant then used this withdrawn money for other purposes, over the objection of Plaintiff.

51. Defendant's wrongful acts amount to a conversion of Plaintiff's property.

52. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered both economic and non-economic damages for which Defendant is liable.

## COUNT II

### (Trespass to Chattels)

53. Plaintiff adopts and incorporates each of the above paragraphs as if fully rewritten herein.

54. Defendant has maintained sole possession of the Bank of America bank accounts since April 2023, despite having no legal or other right to the contents of the bank accounts.

55. Plaintiff is the sole legal owner, of the contents of the bank accounts.

56. By refusing to relinquish the contents of the bank accounts to Plaintiff, Defendant has dispossessed the contents of the bank accounts from Plaintiff.

57. By withdrawing funds without Plaintiff's consent and disposing of these funds, Defendant has dispossessed the contents of the bank accounts from Plaintiff.

58. As a result of Defendant's actions, the condition, value, and/or quality of the bank accounts have otherwise been impaired.

59. Defendant has deprived Plaintiff of the use of the contents of the bank accounts for a substantial time.

60. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered both economic and non-economic damages for which Defendant is liable.

## COUNT III

### (Breach of Contract)

61. Plaintiff adopts and incorporates each of the above paragraphs as if fully rewritten herein.

62. At all material times to this Complaint, a contractual relationship existed between Plaintiff and Defendant.

63. Through Plaintiff and Defendant's words, actions, and writings, a valid contract existed.

64. Defendant's obligation under the contract was, among other things, to open limited liability companies on behalf of Plaintiff, open bank accounts on behalf of Plaintiff, to perform normal and customary CPA services and then allow Plaintiff to have full and complete control over the bank accounts and the companies.

65. In exchange, Plaintiff's obligation under the contract was to pay Defendant for his services, in the amount of $8,970.00, including expenses.

66. Plaintiff has fulfilled his obligations under the contract.

67. Defendant has failed to fulfill his obligations under the contract, as he continuously refuses to provide Plaintiff with control of the bank accounts and refuses to withdraw and return Plaintiff's money to him.

68. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered both economic and non-economic damages for which Defendant is liable.

## COUNT IV

### (Breach of Fiduciary Duty)

69. Plaintiff adopts and incorporates each of the above paragraphs as if fully rewritten herein.

70. A "fiduciary relationship" forms when special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust. *Camp St. Mary's Assn. of W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes*, 3rd Dist. No. 2-06-40, 176 Ohio App.3d 54, 2008-Ohio-1490, 889 N.E.2d 1066 (March 31, 2008).

71. When Plaintiff hired the services of Defendant, which were aimed at helping Plaintiff financially, a fiduciary duty was created between Plaintiff and Defendant.

72. As a fiduciary, Defendant owed Plaintiff a duty to act with the utmost good-faith, trust, confidence, and candor towards Plaintiff, and had a duty to act with the highest degree of honesty and loyalty towards Plaintiff and act in the best interest of Plaintiff.

73. Defendant breached the duty he owes to Plaintiff by refusing to allow Plaintiff access to his own funds, improperly holding Plaintiff's funds, and withdrawing and disposing Plaintiff's money, without his consent. Despite Plaintiff's numerous objections and requests, Defendant refuses to allow Plaintiff any access to the funds held in the Bank of America bank accounts.

74. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered both economic and non-economic damages for which Defendant is liable.

## COUNT V

**(Intentional Misrepresentation and/or Fraud)**

75. Plaintiff adopts and incorporates each of the above paragraphs as if fully rewritten herein.

76. Defendant, through letters, phone calls, electronic mail, and other forms of communication made representations and promises to Plaintiff. Amongst these representations were promises that Defendant would provide Plaintiff access and control over his own personal money and provide services to Plaintiff in the form of implementing a tax strategy that would benefit Plaintiff financially.

77. Instead, Defendant persuaded Plaintiff into allowing Defendant to open bank accounts that Defendant would then use to control, possess, and misappropriate Plaintiff's funds, without Plaintiff's consent.

78. At the time that Defendant made the representations to Plaintiff, Defendant knew these representations to be false and knowingly, willfully, and intentionally made these false representations.

79. Defendant purposefully used these misrepresentations to induce Plaintiff into paying him $8,970.00 for "tax services." Defendant also purposefully used these misrepresentations to induce Plaintiff into allowing Defendant to maintain and control Plaintiff's personal funds, in excess of $1 million.

80. Plaintiff, when deciding to pay for and employ the "services" of Defendant, reasonably and justifiably relied on Defendant's misrepresentations, unknowing that the representations were false and fraudulent.

81. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered both economic and non-economic damages for which Defendant is liable.

## COUNT VI

**(Civil Liability for Criminal Acts Under Ohio Revised Code § 2307.60(A)(1), and Including, But Not Limited To, Ohio Revised Code 29013.02(A)(1), (A)(2), and (A)(3))**

82. Plaintiff adopts and incorporates each of the above paragraphs as if fully rewritten herein.

83. Under Ohio Revised Code § 2307.60(A)(1), "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action," including attorneys' fees and punitive damages.

84. O.R.C. § 2913.02(A)(1) states, No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services without the consent of the owner or person authorized to give consent.

85. Plaintiff has expressly demanded that Defendant close the bank accounts and return the funds contained in the accounts to Plaintiff.

86. Despite these demands, Defendant continues to exert control over Plaintiff's property with the purpose to deprive Plaintiff of his property, without Plaintiff's consent. As such, Defendant has violated O.R.C. § 2913.02(A)(1).

87. O.R.C. § 2913.02(A)(2) states, No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services beyond the scope of the express or implied consent of the owner or person authorized to give consent.

88. Plaintiff and Defendant entered into an agreement wherein Defendant would open bank accounts in the name of the Osseo L.L.C., and Artas, L.L.C., and Plaintiff would deposit his own, personal funds into the accounts. After the bank accounts were set up, Defendant promised to give Plaintiff complete and sole control over the bank accounts and the contents of the accounts.

Defendant never relinquished control to Plaintiff. Instead, Defendant, without Plaintiff's permission, locked Plaintiff out of the bank accounts, prohibiting access from the accounts and/or Plaintiff's personal property.

89. Defendant then withdrew $536,000.00 from the accounts and disposed of this money without Plaintiff's consent and over Plaintiff's express objections.

90. Defendant's possession and/or control of the bank accounts and Plaintiff's personal property is beyond the scope of the express or implied consent given by Plaintiff. As such, Defendant has violated O.R.C. § 2913.02(A)(2).

91. O.R.C. § 2913.02(A)(3) states, No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services by deception.

92. Defendant materially misrepresented his intentions to Plaintiff in order to induce Plaintiff to allow Defendant access and control over Plaintiff's personal property. As such, Defendant has violated O.R.C. § 2913.02(A)(3).

93. Defendant's violation of O.R.C. § 2913.02(A)(1)-(A)(3), to wit, theft, is the direct and proximate cause of Plaintiff's injuries.

94. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered both economic and non-economic damages for which Defendant is liable.

## COUNT VII

**(Civil Liability for Criminal Acts Under Ohio Revised Code § 2307.60(A)(1), and Including, But Not Limited To, Ohio Revised Code 29013.04(A))**

95. Plaintiff adopts and incorporates each of the above paragraphs as if fully rewritten herein.

96. Under Ohio Revised Code § 2307.60(A)(1), "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action," including attorneys' fees and punitive damages.

97. O.R.C. § 2913.04(A) states, No person shall knowingly use or operate the property of another without the consent of the owner or person authorized to give consent.

98. As discussed throughout this Complaint, Defendant is knowingly using the property of Defendant without his consent. Specifically, over Plaintiff's objections, Defendant withdrew $536,000.00 from bank accounts and disposed of the funds. As such, Defendant has violated O.R.C. § 2913.04(A).

99. Defendant's violation of O.R.C. § 2313.04(A), to wit, unauthorized use of property, is the direct and proximate cause of Plaintiff's injuries.

100. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered both economic and non-economic damages for which Defendant is liable.

## COUNT VIII

### (Civil Liability for Criminal Acts Under Ohio Revised Code § 2307.60(A)(1), and Including, But Not Limited To, Ohio Revised Code 29013.05(A))

101. Plaintiff adopts and incorporates each of the above paragraphs as if fully rewritten herein.

102. Under Ohio Revised Code § 2307.60(A)(1), "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action," including attorneys' fees and punitive damages.

103. O.R.C. § 2913.05 states, No person, having devised a scheme to defraud, shall knowingly disseminate, transmit, or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, telecommunications service, or voice

over internet protocol service any writing, data, sign, signal, picture, sound, or image with purpose to execute or otherwise further the scheme to defraud.

104. The fraudulent misrepresentations discussed throughout this Complaint were transmitted from Defendant to Plaintiff through the use of telecommunication devices, such as, but not limited to, electronic mail, phone calls, and text messages.

105. These telecommunications were used to induce Plaintiff into paying and employing the fraudulent services of Defendant and coercing Plaintiff to allow Defendant access to Plaintiff's personal property.

106. These telecommunications were used with the purpose to execute or otherwise further Defendant's scheme to defraud Plaintiff. As such, Defendant has violated O.R.C. § 2913.05(A).

107. Defendant's violation of O.R.C. § 2913.05(A), to wit, telecommunications fraud, is the direct and proximate cause of Plaintiff's injuries.

108. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered both economic and non-economic damages for which Defendant is liable.

## COUNT IX

**(Defamation Per Se)**

109. Plaintiff adopts and incorporates each of the above paragraphs as if fully rewritten herein.

110. Within Defendant's email to Plaintiff and others, as well as his statements to others, Defendant has made a series of false, defamatory utterances, statements, writings, and publications about Plaintiff.

111. These have included utterances, statements, writings, and/or publications that Plaintiff was a criminal, and that Plaintiff was falsely claiming to have been compensated by Bay State.

112. At all material times, Defendant acted intentionally and knew that the utterances, statements, writings, and/or publications were false.

113. These false utterances, statements and/or publications by Defendant were made with willful and reckless disregard of the consequences, with callous disregard for Plaintiff's rights and physical and mental well-being, with legal malice, and with substantial certainty that the consequences thereof would cause serious personal injury to Plaintiff.

114. At the time of the false utterances, statements, writings and/or publications by Defendant, Plaintiff was a private, non-public, figure.

115. The false utterances, statements, writings, and/or publications were injurious to Plaintiff.

116. Defendant's utterances, statements, writings, and/or publications constitute defamation *per se* because such statements accuse Plaintiff of an infamous crime, subject Plaintiff to public hatred, ridicule, or contempt, and affects him injuriously in his trade or profession.

117. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered both economic and non-economic damages for which Defendant is liable.

## COUNT X

### (Negligence)

118. Plaintiff adopts and incorporates each of the above paragraphs as if fully rewritten herein.

119. At all material times, Defendant owed a duty to Plaintiff to exercise the necessary skill and knowledge normally possessed by a reasonable accountant, which Defendant held himself out to be.

120. By defrauding and otherwise stealing Plaintiff's money, as discussed throughout, Defendant has breached his duty owed to Plaintiff.

121. Plaintiff justifiably relied upon the information and advice given to him by Defendant. As a result of Plaintiff's reliance, as well as Defendant's breach, Plaintiff has suffered pecuniary loss.

122. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered both economic and non-economic damages for which Defendant is liable.

## DAMAGES

123. Plaintiff adopts and incorporates each of the above paragraphs as if fully rewritten herein.

124. Plaintiff states that as a direct and proximate result of the allegations and claims enumerated above, Plaintiff has incurred, and will continue to incur, severe and permanent injuries, economic loss and related expenses, fear and apprehension, loss of enjoyment of life, and other damages.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demand judgment against Defendants as follows:

A. Order Defendant to close the bank accounts, withdraw any and all funds in the accounts, and return said funds to Plaintiff.

B. Award Injunctive Relief by Ordering the bank accounts to be frozen until the conclusion of this matter.

C. Award Injunctive Relief by Ordering Bank of America to make normal and customary efforts to reverse all outgoing wires from the bank accounts and redeposit any funds withdrawn from the accounts.

D. Award Plaintiffs compensatory damages in an amount to be shown at trial;

E. Award Plaintiffs punitive damages in an amount to be shown at trial;

F.  Award Plaintiffs reasonable attorneys' fees, costs, and disbursements;

G.  Award Pre and post judgement interest;

H.  Grant Plaintiffs such additional relief as the Court deems just a proper.

>
> Respectfully Submitted,
>
> */s/ Eric F. Long*
> ERIC F. LONG (0093197)
> TYLER J. WALCHANOWICZ (0100115)
> Counsel for Plaintiffs
> Friedman, Nemecek & Long, L.L.C.
> 1360 East 9th Street, Suite 650
> Cleveland, OH 44114
> P: (216) 928-7700
> F: (216) 820-4659
> E: efl@fanlegal.com
> E: tjw@fanlegal.com